UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| ERICA LAYTON, ET AL. | CIVIL ACTION NO. 13-1634 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| CHEVRON ENVIRONMENTAL MANAGEMENT COMPANY, ET AL. | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM RULING**

Before the court is an unopposed motion for summary judgment filed by Chevron Environmental Management Company ("CEMC") and Conestoga-Rovers & Associates, Inc. ("CRA") (collectively "defendants"). See Record Document 17. The motion seeks the dismissal of Erica Layton's ("Layton") personal injury and property damage claims and Gerald Buntyn, Jr.'s ("Buntyn") personal injury claim on the grounds that each of these claims is prescribed. See id. For the reasons stated herein, the defendants' motion is **GRANTED.**

**I.    BACKGROUND**

Layton, along with her husband, Samuel Layton, and her son, Buntyn, filed the instant lawsuit against the defendants on June 13, 2013. See Record Document 1. The complaint alleges that the defendants are liable for property damage at the Layton residence, for personal injuries suffered by Layton and Buntyn, and for Samuel Layton's damages for loss of consortium and society. See id. The following facts are taken from the plaintiffs' complaint and the defendants' statement of undisputed material facts in support of its motion for summary judgment, the latter deemed admitted under Federal Rule of Civil Procedure 56(e) and Local Rule 56.2 because the defendants' motion is unopposed.

Layton presently resides at 1106 East Washington Street in Shreveport and has resided there since purchasing the property in 1995. The residence is located in the Anderson Island subdivision, which is so named because it is built on property that was used as a refinery and tank farm by Texaco from 1929 to 1949. See id. A group of Anderson Island residents filed a class action lawsuit against Texaco and others in 1997. That lawsuit ("Texaco") was filed in state court and then removed to the United States District Court for the Western District of Louisiana. See Record Document 17, Ex. 1. The plaintiffs in Texaco sought damages for personal injuries and property damage, alleging that Texaco's operations at the Anderson Island facility resulted in environmental contamination. See id., Ex. 1. Layton and her former husband, Gerald, joined Texaco as named plaintiffs in July 1998. See id., Ex. 3.[1] In written responses to interrogatories, Layton stated she was seeking damages for "[l]oss of property value" and unspecified "health problems." Id., Ex. 4. Additionally, Layton stated she first learned of alleged contamination in Anderson Island and the potential health risks due to "[m]edia coverage." Id., Ex. 4. Buntyn was also represented in Texaco by his father, Gerald. See id., Ex. 5. This court ultimately dismissed all of the claims in Texaco. See id., Exs. 2, 6, and 7. The United States Fifth Circuit affirmed the dismissal. See May v. Texaco Inc., 73 F. App'x 78 (5th Cir. 2003).

Texaco entered into an agreement with the Louisiana Department of Environmental Quality ("LDEQ") with three primary objectives regarding the Anderson Island area: "1) complete an environmental investigation of the [Anderson Island] area; 2) determine the

---

[1] In Texaco, Layton is identified by her former married name, Erica Buntyn.

appropriate Remedial Standard(s) and Management Option(s) under the requirements found in the Louisiana Administrative Code . . . and (3) undertake, and implement the appropriate remedial actions for the [area], if necessary." See Record Document 17, Ex. 14. CEMC and CRA have assisted Texaco with the environmental investigation of Anderson Island.

A project manager for CEMC sent a letter to Layton and her then-husband, Gerald, on July 6, 2005, informing them that "[p]etroleum hydrocarbons were detected in some of the soil and groundwater samples" collected from the Anderson Island area. Record Document 1, Ex. A. However, the letter stated that "the LDEQ has determined that the concentrations of petroleum hydrocarbons are not a health concern . . . ." Id., Ex. A. Moreover, the letter indicated that LDEQ regulations required additional testing of certain areas, which included Layton's residence. CEMC requested permission to enter Layton's property and install various mechanisms to take soil samples. See id. Layton authorized CEMC to perform the work. See id. at ¶ 11.

On August 27, 2009, a different project manager for CEMC sent a letter to Layton. See id., Ex. B. This letter stated that Layton would be compensated $250 per year for the four vapor sample locations installed on her property, which were originally installed on August 25, 2005, so long as they remained there. Chevron enclosed a $1,000 check to cover the period from August 2008 through August 2009, and informed Layton that she would be paid $1,000 annually thereafter. See id. The plaintiffs' complaint alleges that Raymond Trace Chadwick ("Chadwick"), a CRA employee, began hand-delivering checks to Layton in August 2010. See id. at ¶ 13. Additionally, the plaintiffs contend that Chadwick met with Layton at her residence in August 2012. The plaintiffs allege that,

during this meeting, Chadwick asked Layton how her health was and advised her to view a website to review health issues surrounding her property. See id. at ¶ 14.

On December 5, 2012, a CEMC project manager sent another letter to Layton informing her that petroleum hydrocarbons had been detected in soil samples collected from Layton's neighborhood and that LDEQ regulations required further testing on Layton's property. See id., Ex. C. The letter requested permission to enter Layton's property to install more equipment on her property, for which Layton would be compensated. Layton would also be provided a summary of sample results. Layton approved the request. See id. However, the plaintiffs allege that no work has been performed on Layton's property. See id. at ¶ 16.

Layton, Buntyn, and Samuel Layton filed the instant lawsuit on June 13, 2013. The complaint alleges that Layton was diagnosed with both rectal cancer and breast cancer in 2010 and that these cancers were caused because the defendants concealed the presence of carcinogens on Layton's property . See id. at ¶¶ 17-19. Additionally, Layton claims that her property is devalued due to health and environmental concerns. See id. at ¶ 23. Buntyn contends that he began having headaches in 1997, the same year Texaco was filed, and that he began undergoing treatments for a chiari malformation of his brain and continues to see a neurologist regularly. See id. at ¶¶ 21-22. Samuel Layton, Layton's present husband, claims damages of loss of society and consortium due to Layton's injuries. See id. at ¶ 24. The defendants filed the instant motion for summary judgment on October 24, 2013, seeking dismissal of Layton's and Buntyn's respective claims based on prescription. See Record Document 17. On November 8, 2013, the plaintiffs filed a motion for an extension of time to file their opposition to the defendants' motion. See

Record Document 21. The court granted the plaintiffs' motion on November 18, 2013, and gave the plaintiffs five additional days to file their opposition. See Record Document 22. The plaintiffs never filed an opposition, and the defendants' motion is therefore unopposed.

## II.  LAW AND ANALYSIS

### A.  Summary Judgment Standard.

Federal Rule of Civil Procedure 56(a) provides, in pertinent part:

> (a) Motion for Summary Judgment or Partial Summary Judgment. A party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a).[2] "Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Patrick v. Ridge, 394 F.3d 311, 315 (5th Cir. 2004). If the movant demonstrates the absence of a genuine dispute of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine [dispute] for trial." Gen. Universal Sys., Inc. v. Lee, 379 F.3d 131, 141 (5th Cir. 2004). Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted. See Boudreaux v. Swift Transp. Co., 402 F.3d 536, 540 (5th Cir. 2005). The

---

[2] The Advisory Committee Notes reflect that subsection (a)'s heading and text were amended in 2010 to clarify that "summary judgment may be requested not only as to an entire case but also as to a claim, defense, or part of a claim or defense." Fed. R. Civ. P. 56(a) and Advisory Committee Notes.

5

Fifth Circuit has cautioned that "conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy" the nonmovant's burden in a motion for summary judgment. Ramsey v. Henderson, 286 F.3d 264, 269 (5th Cir. 2002).

### B.    Plaintiffs' Failure To Respond To The Defendants' Motion.

The defendants filed the instant motion for summary judgment on October 24, 2013. See Record Document 17. To date, the plaintiffs have not responded. Local Rule 7.5 requires a respondent opposing a motion to "file a response, including opposing affidavits, memorandum, and such supporting documents as are then available, within 21 days after service of the motion." The rule further provides that "for good cause . . ., a respondent may be required to file a response and supporting documents, including memoranda, within such shorter or longer period of time as the court may order at the discretion of the judge, or upon written ex parte motion served on all parties." L.R. 7.5.

The plaintiffs' opposition was originally due within 14 days from October 25, 2013. See Record Document 19. On November 18, 2013, the court granted a motion for extension of time, thereby allowing the plaintiffs an additional five days to file their opposition. See Record Document 22.

The plaintiffs failed to oppose the motion for summary judgment within the required periods set forth in the Notice of Motion Setting and the order granting the extension of time. Federal Rule of Civil Procedure 56(e) states the following:

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
>
> . . .
>
> (2) consider the fact undisputed for purposes of the motion;

6

>(3) grant summary judgment if the motion and supporting materials--including the facts considered undisputed--show that movant is entitled to it; or
>
>(4) issue any other appropriate order.

**C.      Prescription.**

Because this court's jurisdiction is based on diversity of citizenship, Louisiana's prescriptive period applies. See Orleans Parish Sch. Bd. v. Asbestos Corp. Ltd., 114 F.3d 66, 68 (5th Cir. 1997). Delictual actions, which include personal injury claims, and actions for property damage are both subject to a one-year liberative prescriptive period under Louisiana law. See La. Civ. Code arts. 3492 and 3493. For personal injury claims, "[p]rescription commences when a plaintiff obtains actual or constructive knowledge of facts indicating to a reasonable person that he or she is the victim of a tort." Campo v. Correa, 828 So. 2d 502, 510 (La. 2002). For property damage claims, "prescription commences to run from the day the owner of the immovable acquired, or should have acquired, knowledge of the damage." La. Civ. Code art. 3493.

Prescription runs against all persons unless legislation establishes otherwise. See La. Civ. Code art. 3467. Prescription statutes are to be construed against a finding of prescription. See Wimberly v. Gatch, 635 So. 2d 206, 211 (La. 1994). Generally, the party arguing that a claim is prescribed bears the burden of proof. See Carter v. Haygood, 892 So. 2d 1261, 1267 (La. 2005). However, if it appears from the face of the petition that a claim is prescribed, then the burden is on the plaintiff to show why the claim is not prescribed. See id.[3]

---

[3] For purposes of this Memorandum Ruling, the court assumes that neither Layton's nor Buntyn's claims are prescribed on the face of the petition. Therefore, the burden of

7

### D. Layton's Personal Injury Claims.

For personal injuries resulting from exposure to toxins, prescription commences once the plaintiff has or reasonably should have knowledge of the tortious act, the damage caused by the tortious act, and a causal link between the tortious act and the damage. See Ducre v. Mine Safety Appliances, 963 F.2d 757, 760 (5th Cir. 1992). The instant lawsuit was filed on June 13, 2013. While Layton was diagnosed with breast and rectal cancer in 2010, the petition alleges that Layton did not know that there were any health-related concerns with her property until August 13, 2012. Assuming that prescription commenced to run no earlier than this date, Layton's personal injury claims would not be prescribed.

However, as the court noted earlier, Layton joined Texaco as a named plaintiff in July 1998. See Record Document 17, Ex. 3. When answering interrogatories in Texaco in September 1999, Layton stated she was seeking damages for unspecified health problems. See id., Ex. 4. Moreover, when asked how she learned of "any alleged health risks from any alleged [c]ontamination in Anderson Island," Layton stated "[m]edia coverage." Id., Ex. 4. This shows that Layton had knowledge of the tortious act—contamination of the land by Texaco—and a causal link between that act and health risks. As for damage, Louisiana courts have found damage sufficient for prescription when the plaintiff is diagnosed with the health issues upon which the lawsuit is based. See Brown v. R.J. Reynolds Tobacco Co., 52 F.3d 524, 527 (5th Cir. 1995); Huckaby v. Bellsouth Telecomm., Inc., 961 So. 2d 651, 656 (La. App. 2d Cir. 2007); Richardson v. Avondale Shipyards, Inc., 600 So. 2d 801, 804-05 (La. App. 5th Cir. 1992). Thus, when

---

proof is on the defendants to prove those claims are prescribed.

Layton was diagnosed with breast and rectal cancer in 2010, she should have known this damage could have resulted from the contamination of Anderson Island. Combined with her knowledge of the tortious act and causal link, prescription began to run when Layton was diagnosed with cancer in 2010. Therefore, because the instant lawsuit was not filed until 2013, Layton's personal injury claims are prescribed.

### E. Buntyn's Personal Injury Claim.

For similar reasons, Buntyn's personal injury claim is also prescribed. Buntyn was represented in Texaco by his father and Layton's former husband, Gerald Buntyn. See Record Document 17, Ex. 5. The complaint alleges that Buntyn was diagnosed with a chiari malformation on his brain in 1997. Although Buntyn was a minor when his health issues arose, prescription runs against minors unless some exception is established by law. See La. Civ. Code art. 3467. Because his interest was represented in Texaco, Buntyn had knowledge of the tortious act (contamination), the resulting damage (Buntyn's health issues), and a causal link between the two. Therefore, Buntyn's personal injury claim is prescribed.

### F. Layton's Property Damage Claim.

Prescription commences to run on property damage claims when the owner has actual or constructive knowledge of the damage. See Hogg v. Chevron USA, Inc., 45 So. 3d 991, 997 (La. 2010). Layton has lived at her current residence since 1995. The original complaint in Texaco, which Layton joined as a named party in 1998, alleged that "there exists substantial waste and toxic contamination in the surface and subsurface soils throughout the Anderson Island [s]ubdivision." Record Document 17, Ex. 1. Moreover,

when answering interrogatories in Texaco, Layton listed "[l]oss of property value" as a category of damages she was claiming and stated that she learned of alleged contamination in the Anderson Island area from "[m]edia coverage." Id., Ex. 4. Additionally, Layton received a letter from CEMC in July 2005, informing her that petroleum hydrocarbons had been discovered in soil and groundwater samples taken from the Anderson Island area. See Record Document 1, Ex. A. Moreover, the letter stated that several of those samples "exceeded the relevant RECAP screening standards." Id., Ex. A. The letter further informed Layton that her property was located in an area that required additional investigation. See id., Ex. A. Based on the contents of this letter and her prior participation in the Texaco lawsuit, there can be no doubt that Layton had knowledge sufficient for prescription to commence no later than July 2005. Because the instant lawsuit was not filed until June 2013, Layton's property damage claims are prescribed.

## III. CONCLUSION

For the foregoing reasons, the defendants' motion for summary judgment is **GRANTED** as to Layton's personal injury and property damage claims and Buntyn's personal injury claim. The only remaining claim in the lawsuit is Samuel Layton's claim for loss of consortium and society.[4]

---

[4] The defendants did not address Samuel Layton's claim for loss of consortium and society in their motion for summary judgment. While loss of consortium claims are derivative of the primary victim's claim, the two claims do not necessarily arise at the same time. See Safford v. Painewebber, Inc., 730 F. Supp. 15, 20 (E.D. La. 1990); Baldwin v. B.J. Hughes, Inc., 617 F. Supp. 30, 31-32 (W.D. La. 1985). Because nothing in the record addresses when Samuel Layton first suffered any damage or injury, this court is unable to make a ruling as to whether Samuel Layton's claim for loss of consortium and society is prescribed. See Record Document 1; Safford, 730 F. Supp. at 20; Baldwin, 617 F. Supp. at 31-32.

An order consistent with the terms of this Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, on this the 21st day of January, 2014.

*[signature]*
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE